SUNITA KAPOOR, LL.M. (SBN #154186)
LAW OFFICES OF SUNITA KAPOOR
4115 Blackhawk Plaza Circle, Suite 100
Danville, CA 94506
Telephone: (925) 351-6789
Facsimile: (925) 831-1059

Attorney for Plaintiff,
Ruby Grapes, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ruby Grapes, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>Mitch Spaletta, an individual, Rachele Spalleta, an individual, Erica Bettencourt, an individual, Intercoastal Wine Company, LLC, a California limited liability company and DOES 1-50 inclusive,<br><br>    Defendants. | Case No. 4:20-cv-05302-DMR<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff, Ruby Grapes, LLC. (hereinafter "Plaintiff") hereby opposes Defendants' Motion to Dismiss its Initial Complaint (hereafter "Complaint") in this matter.  The Opposition is based upon the attached Memorandum of Points and Authorities, the pleadings and papers on file herein, and upon such further oral and documentary evidence as may be presented at the time of hearing.

## I.      INTRODUCTION

As Plaintiff has plead valid federal and state court causes of action, the Court should reject all of Defendants' arguments. Through its Complaint, Plaintiff provides Defendants with fair notice of its claims — and the allegations, taken as true, plausibly and definitively support each claim Plaintiff pleads. At the pleading stage and before any discovery has been taken, Plaintiff's allegations as to Defendants are sufficient, and also clear enough to support Plaintiff's claims. Reading through the

particularized allegations of the Complaint from beginning to end— and accepting them as true for purposes of the motion — allows the Court to reasonably infer Defendants are liable for the misconduct alleged. The Court should therefore deny Defendants' Motion to Dismiss Plaintiff's Complaint. In the event the Court finds any merit in Defendants' Motion, Plaintiff seeks leave from the Court to amend its complaint.

## II.    LEGAL STANDARD

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Its allegations must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). And it must also "contain sufficient factual matter" that, when accepted as true, states a "plausible" claim on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations in the complaint. *Retail Clerks Int'l Assn. v. Schermerhorn*, 373 U.S. 746, 753, fn. 6 (1963); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); see also *Knieval v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from the facts properly alleged. *Retail Clerks Int'l Assn.*, 373 U.S. at 753, fn. 6. Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible" is the complaint properly dismissed. *Twombly*, 550 U.S. at 570; see also *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.").

Indeed, at the pleading stage, the requirement is simply that enough facts be provided to raise a reasonable expectation that discovery will reveal evidence of the claim presented in the complaint. *Twombly*, 550 U.S. at 556. In addition to the complaint, the court, on a motion to dismiss, may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

"The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's threshold burden at the pleading stage is relatively low. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (internal citations omitted). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 555. ***However, a complaint does not need detailed factual allegations to survive dismissal***. *Id* (emphasis added). Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 570.

A court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) only where the factual allegations fail to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 55 (2007). Leave to amend defective claims should be freely granted, unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [*Conley v. Gibson*, 355 U.S. 41 (1957)] In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. [*NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)] Of course, Rule 8(a) requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief." [F.R.Civ.P. 8(a)(2)]

Obviously, a complaint is insufficient if it contains only "threadbare recitals of the elements of a cause of action" or mere "labels and conclusions," but a complaint is "plausible on its face" when it pleads facts that allow the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged. [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)] "If there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible, the plaintiff's complaint survives a motion to dismiss under Fed.R.Civ.P. 12(b)(6). . . The standard at this stage of litigation is not that the plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only plausibly suggest entitlement to relief." *[Star v. Baca*, 652 F.3d 1202 (9th Cir., 2011)].

Further, leave to amend should be freely granted, and "a district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities." *[A.E. v. County of Tulare*, 666 F.3d 631, 636 (9th Cir., 2012)] The analysis which follows below should remove any doubt about Plaintiff's ability to cure any deficiencies in the complaint.

# III.   ARGUMENT

## A.  THE PLEADING STANDARDS FOR A RICO ACTION HAVE BEEN MET OR CAN EASILY RE MET BY AMENDMENT OF THE COMPLAINT.

Plaintiff's Complaint alleges valid claims for and for violation of the RICO Act (1st and 2nd Causes of action) as set forth below:

***The applicable standards.***

The elements of a civil action under the RICO Act (18 U.S.C. §§ 1961-1968) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property." *Living Designs Inc. v. E.I. DuPont*, 431 F.3d 353 (9th Cir., 2005); 18 U.S.C. §§ 1964(c), 1962(c). The term "enterprise" is defined in 18 U.S.C. § 1961(4) as any individual, partnership, corporation, association, or other legal entity. *Living Designs*, supra.

The RICO Act defines "racketeering activity" as including, *inter alia*, indictable acts relating to tampering with a witness, victim, or informant. *Living Designs*, supra, citing 18 U.S.C. § 1961(1)(B).

***Plaintiff Has Plead a Valid Claims for Relief Under the RICO Act***:

"A civil RICO claim requires allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff." *Swartz v. KPMG LLP*, 476 F.3d 756, 760-61 (9th Cir. 2007). Plaintiff's Complaint properly pleads the required elements of RICO:

*l.*     **Enterprise**: "[T]o establish liability under 18 USC § 1962(c), one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The statute expressly defines "enterprise" to include a corporation. *See* 18 U.S.C. § 1961(4). A corporation is a separate legal entity from its employees. *Cedric*, 533 U.S. at 163. "A corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern of activity,' §

1962(c), uses that corporation as a 'vehicle' whether he is or is not, its sole owner." *Cedric*, 533 U.S. at 164-65. Thus, corporate Defendant and all individual Defendants are separate entities which constitute an enterprise and together concocted a plan to extort as monies as possible from Plaintiff prior to their departure by increasing its storage fees first by **625%** then ultimately to **1,250%** (hereinafter referred to as the "Scheme"). Complaint ¶¶'s 29-46.

*2.*      *Pattern of Racketeering*: ***The predicate acts are specific and numerous.*** To show a "pattern of racketeering activity" requires merely that Plaintiff must show at least two (2) predicate acts within a period of ten (10) years. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969 (9th Cir., 2008); 18 U.S.C.S. §§ 1961(1), 1961(5). *Howard v. America Online Inc.*, 208 F.3c 741, 750 (9th Cir. 2000).

Wire fraud is similar to regular fraud, except that it takes place over phone lines or involves electronic communications. The Defendants created or participated in a scheme to defraud another out of money or property. The Defendants did so with intent to defraud. It was reasonably foreseeable that Defendants would use wire communications and the Defendants did in fact use interstate wire communications to further their Scheme.

As set forth in the Complaint, ¶s 30-39 Plaintiff has sufficiently alleged more than two acts of racketeering. Since the filing of the Initial Complaint, Plaintiff has discovered additional acts and omissions that Defendants have engaged in furtherance of their racketeering activities. Plaintiff has alleged that Defendants violated the RICO Act by engaging in multiple occurrences of wire and mail fraud, predicate acts, Complaint ¶s 30-31, 35-36, and 38. Wire and mail fraud constitute predicate acts for a pattern of racketeering activity. 18 U.S.C. § 1961(1).

18 U.S.C 1962(c) Provides that:
> it shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of racketeering activity or collection
> of unlawful debt.

Defendants argue that their price gouging can only last for a month, however, this is not the case as we are in an ongoing pandemic. The state of emergency has not been lifted by the Governor, in fact, it keeps getting extended. Therefore, there can be no expiration or prohibition on price hikes. Defendants contend that Plaintiff, an LLC, is not a consumer. However, this argument appears to be misplaced, as

there is a "business to business" market for selling all the sorts of goods and services that businesses need, from bottles and corks to masks and sanitizer and so on. For businesses selling into the business to business market, other companies are the proximate consumers of the Defendants products and/or services and ultimately any increased costs are passed down to the individual consumers thereby directly or indirectly affecting interstate commerce. If the Court finds that these allegations are not alleged in the Complaint with sufficient particularity, this again can easily be cured through amendment.

In this case, Defendants held Plaintiff's wine as hostage and demanded as ransom the payment of exorbitant and unconscionable fees prior to allowing Plaintiff to remove and/or sell its wine. As Plaintiff's wine is sold, marketing, and/or distributed throughout the USA and internationally, Defendants actions have affected interstate and foreign commerce. In furtherance of Defendants scheme, based on information and belief, Defendants are trying to increase Plaintiff's costs thereby increasing Defendants competitive advantage over Plaintiff. Based upon information and belief, Defendants scheme to increase Plaintiff's cost was an attempt to commit price fixing in interstate commerce, thereby violating the Sherman Act. By making Plaintiff's costs increase, Defendants scheme would result in Defendants having a price advantage over Plaintiff. Due to Defendants scheme, Plaintiff's wine has been unable to be sold for many months due to Defendants scheme which has interfered both with existing and potential contractual relations with third parties and in addition has caused Plaintiff to sustain prospective economic damage which can and will be alleged.

**3.** ***Proximately Caused Injury***: A claim is cognizable under RICO only if there is proximate cause, which "requires careful consideration of the 'relation between the injury asserted and the injurious conduct alleged.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462, (2006). Here, unquestionably Plaintiff's loss of revenue, loss of contractual relations, suppression of Plaintiff's marketability caused by Defendants method, pattern and scheme of fraud has caused substantial damage to Plaintiff.

Defendants attack Plaintiff's RICO claims by arguing and disputing racketeering activity by Defendants. However, on a Motion to Dismiss, all allegations of material facts in the Complaint must be taken as true and construed in the light most favorable to the nonmoving party." *Parks Sch.*, supra, 51 F.3d at 1484. Thus, Defendants disputes are not appropriate at this stage of the litigation. Accordingly, Plaintiff has pleaded all the required elements for a valid causes of action under RICO or would provide leave to amend.

Plaintiff has alleged independent federal cause of action under the RICO Act against Defendants. In addition, Plaintiff has also pleaded causes of action for fraud and deceit and conversion. Defendants engaged in a scheme designed to deprive Plaintiff of its rights purely for their own financial benefit. As part of this scheme, Defendants perpetrated frauds, made misrepresentations and violated laws and the duties of good faith and fair dealing that underlie all business dealings. Defendants have engaged in unethical, unscrupulous, offensive and illegal behavior, in violation of B&P § 17200 et. seq. Thus, Plaintiff's fourth Claim for Relief is valid and must be allowed to stand.

Defendants appear to argue that, before discovery has commenced, they should be allowed to benefit from smokescreens to veil their greed and tortious conduct utilized to hide their unlawful scheme and/or activities. The Complaint alleges actions conducted by Defendants that sufficiently link it to their fraudulent acts and so the Court should deny Defendants' Motion.

The heightened standards under Rule 9(b) may be relaxed as to matters within the opposing party's knowledge. Moreover, Defendants' averments to the effect that they are somehow at a disadvantage in answering these claims of fraud due to lack of specificity are highly disingenuous. The purpose of the heightened pleading standards evaporates when the Defendants and their counsel already know full well exactly what the pattern of fraudulent activity entailed.

As to those allegations which are based on fraud, and to which the heightened pleading standards of Rule 9(b) apply, these standards easily can be met through leave to amend, as shown in the section immediately below, regarding the myriad predicate acts establishing a pattern of racketeering activity. Again, leave to amend should be freely granted here in response to Defendants' first filing in this action. *A.E. v. County of Tulare*, supra, at p. 636; also see, e.g., *United States v. United Healthcase Ins.Co.*, 848 F.3d 1161 (9th Cir., 2016).

**B.   Plaintiff Has Pleaded Its Third Claims For Relief For Fraud And Deceit, And Negligent Misrepresentation With The Requisite Degree Of Particularity:**

Defendants assert that Plaintiff has not alleged fraud against Defendants with the requisite specificity under F.R.C.P. Rule 9. However, the allegations are more than sufficient to withstand a F.R.C.P. Rule 9 challenge. "Pursuant to Rule 9(b), 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' Fed. R. Civ. P. 9(b). The particularity requirement is satisfied if the allegations of fraud are specific enough to give a defendant notice of the alleged misconduct so that it can defend against the charge and not just deny any wrongdoing." *In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1146 (C.D. Cal. 2003) referencing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Here, the Complaint sets forth numerous specific allegations sufficient to support a claim for fraud. The essential elements of a cause of action for fraud are (1) misrepresentation, (2) knowledge of

its falsity, (3) intent to defraud, (4) justifiable reliance and (5) resulting damage. *Cal. Civ. Code*, § 1709; See also *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109.

The Complaint alleges each of these specifically in ¶¶'s 52-77. On July 14, 2020, Defendants agreed not to increase Plaintiffs storage rate and provide Plaintiff time to remove its Wine. Complaint ¶ 58. Plaintiff relied on the misrepresentation and fell victim to Defendants scheme. Thereafter, on July 31, 2020, Defendants doubled down on their Scheme and sent Plaintiff an invoice with a storage fee of $1.00 per gallon, a **1,250% increase**. Complaint ¶ 60.

Based upon information and belief, Defendants have engaged in unlawful business acts or practices, including, but not limited to, price gouging, fraud, unjust enrichment, and civil conspiracy all in an effort to gain unfair competitive advantage over Plaintiff.

Plaintiff after filing its initial complaint has learned that Defendants wine chiller was inoperable for about six weeks during the heatwave. Wine is extremely volatile and heat sensitive and must be stored within a specific temperature range. Defendants never notified Plaintiff that their chiller was inoperable. The chiller not working may have further damaged Plaintiff's wine.

As chillers are extremely expensive to replace, perhaps this was another reason for Defendants to further their scheme in order to rob Peter to pay Paul.

The statement made by Defendants in Paragraph 58 of the Complaint was in false in the light of paragraph 60. Defendants knew that the representations were false when made or made the representations recklessly without knowing whether they were true or false. Complaint ¶65.

Defendants made the representation in paragraph 58 with an intent to defraud Plaintiff, Defendants made the representations for the purpose of inducing Plaintiff to rely upon them and to act or to refrain from acting in reliance thereon. Complaint ¶66.

Plaintiff was unaware of the falsity of the representations; acted in reliance upon the truth of the representations and were justified in relying upon the representations. Complaint ¶ 67.

In reliance upon the truth of the representations, Plaintiff sustained damages. Complaint ¶ 68. Defendants knew that the representations were false when made or made the representations recklessly without knowing whether they were true or false. Complaint ¶ 71.

Therefore, all the elements for fraud have been sufficiently pleaded in the Complaint against Defendants, and the Motion to Dismiss should be denied.

The purpose of the specificity requirement in a complaint alleging potentially fraudulent behavior is to give Defendants explicit notice of the allegedly fraudulent conduct. *Daniels v. Select Portfolio Servicing, Inc*. (2016) 246 Cal. App. 4th 1150, 1166. To comply with Rule 9(b), allegations of fraud must be specific enough to give Defendants sufficient notice of the particular fraudulent misconduct so that they can defend against the charge and not just deny that they have done anything wrong. *Swartz v. KP MG LLP*, 476 F.3d 756, at 764 (9th Cir.2007); citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotations omitted)).

[T]he particularity requirement of Rule 9 is not ...intended to abrogate or mute the Rule 8 "notice" pleading standard that applies in federal courts, and the two Rules must be read in harmony with one another. *See* Federal Civil Rules Handbook 2007 300, 302. "The amount of particularity or specificity required for pleading fraud or mistake will differ from case to case, but generally depends upon the amount of access the pleader has to the specific facts, considering the complexity of the claim, the relationship of the parties, the context in which the alleged fraud or mistake occurs, and the amount of specificity necessary for the adverse party to prepare a responsive pleading. *Id* at 301-302. Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) only "requires that plaintiff specifically pleads those surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "in cases where fraud is alleged, we relax pleading requirements where the relevant are known only to the defendant." *Id.* In

those cases, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore*, supra, 885 F.2d at 540; *Rubenstein v. Neiman Marcus Grp. LLC* (2017) 687 Fed. Appx. 564, 578.

In the present action, Plaintiff has specifically alleged fraud, deceit, and negligent misrepresentation. Plaintiff has identified the who, what, how and when of the fraud and negligent misrepresentations to the best of his knowledge.

In this situation, Defendants are the ones with more knowledge of their own fraud. Defendant Intercoastal, is a non-public corporation which is not required to make its records available for review. Furthermore, Defendants are in possession of records including, but not limited to, financial records, the maleficence and/or replacement of the chiller, and their storage protocols, and internal memoranda and communications with third parties. Plaintiff has no way of alleging anything more specific as all of the relevant information is within Defendant Intercoastal's control. However, Plaintiff has alleged with sufficient specificity and provided adequate notice to Defendants of how it has been defrauded by Defendants.

FRCP 9(b) "is aimed at unintelligibility rather than lack of detail and is only appropriate when the Defendants cannot understand the substance of the claim asserted." *Beery v. Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D. Cal. 1993). Defendants in this case cannot credibly assert that they do not understand the nature of Plaintiffs' claims or the fraud alleged, and cannot adequately respond. As Plaintiff's cause of action for fraud and deceit is sufficiently detailed to give adequate notice to Defendants, it is valid and not subject to a motion to dismiss.

**THE HEIGHTENED PLEADING STANDARDS FOR FRAUD HAVE BEEN MET OR CAN EASILY BE MET BY AMENDMENT OF THE INITIAL COMPLAINT.**

Under California state law, the requirement that fraud be pleaded with heightened specificity is twofold: (1) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged; and (2) every element of the cause of action for fraud must be alleged in the

proper manner. [*Ibid.*] However, the cases give the impression that entirely too much emphasis has been laid on the requirement of specific pleading. The characterization of some actions as 'disfavored' has little to recommend it. and actions based on fraud are so numerous and commonplace that the implications of immoral conduct are seldom considered more serious than those involved in other intentional torts. Hence, while it seems sound to require specific pleading of the facts of fraud rather than general conclusions, the courts should not look askance at the complaint, and seek to absolve the defendant from liability, on highly technical legal requirements of form in pleading. Pleading facts in ordinary and concise language is as permissible in fraud cases as in any others, and liberal constructions of the pleading is as much a duty of the court in these as in other cases.

In *Tarmann v. State Farm Mutual Auto Ins. Co.*, a case involving misrepresentations made by certain unknown and unknowable sub-agents of the insurance giant, the court stated in dicta that "The requirement of specificity in a fraud action against a corporation requires plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." [*Tarmann v. State Farm Mutual Auto Ins. Co.*, 2 C.A.4th 153 (1991)] However, the *Tarmann* court went on to say that "the requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy . . . or 'when the facts lie more in the knowledge of the opposite party.' [*Ibid.*]

It seems clear from this discussion and from the discussion of heightened pleading for fraud as it applies to the RICO cause of action that the same general set of considerations applies to the cause of action for fraud under state law (California Business & Professions Code, §§ 17200, et.seq.).

Defendants violated California Business & Professions Code §§ 17200-17500 by engaging in fraudulent business acts and practices, and by making unfair, deceptive, untrue, and/or misleading statements which have unjustly enriched Defendants at the expense of Plaintiff, who justifiably relied

on Defendants' fraudulent statements and therefore was unwittingly persuaded to continue to store its

wine after a change of ownership at a fixed rate of $0.08/gallon which its would not have agreed to

had it known the true intent of Defendants.

Plaintiff submits that the statements and omissions by Defendants are sufficient to meet the

pleading standards, in light of Defendants' superior ability to document their fraudulent activities

based on internal and external documents that have not yet had any opportunity for discovery by

Plaintiff.

## C.   Plaintiff Has Adequately Alleged a Cause of Action for Federal Unfair Competition Plaintiff's Under Business and Professions Code § 17200

The UCL defines "unfair competition" to include "any unlawful, unfair or fraudulent" business

act or practice. (Bus. & Prof. Code, § 17200.) An "unlawful business activity" includes "'anything that

can properly be called a business practice and that at the same time is forbidden by law.'" *Barquis v.*

*Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113. The Legislature "intended ... to permit tribunals

to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Id.* at

111.Cal. Bus. & Prof. Code § 17200 defines "unfair competition" as "any unlawful, unfair or

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising ...."

Virtually any law can serve as the predicate for a Business and Professions Code section 17200

action; it may be ""civil or criminal, federal, state or municipal, statutory, regulatory, or court-made ...

[B&P s]ection 17200 "borrows" violations of other laws and treats them as unlawful practices

independently actionable under section 17200 et seq.'" ... "'an 'unfair' business practice occurs when it

offends an established public policy or when the practice is immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers." ...." *Gafcon, Inc. v. Ponsor & Associates*,

(2002) 98 Cal. App. 4th 1388, 1425 n.15.

Here, Plaintiff alleges that Defendants misrepresentations and omissions violate Plaintiff's

rights has caused confusion and deception. As discussed above, Defendants conduct and Plaintiff's

allegations satisfy a cause of action for Federal Unfair Competition, and therefore, the Motion to Dismiss should be denied.

Defendants assert that Plaintiff's claim for violation of California Business & Professions Code § 17200, et seq. (UCL) fails to state a claim that Plaintiff has suffered any concrete financial damage as a result of Defendants' alleged acts. This appears to be untrue as Plaintiff clearly states in pertinent part that: "… prior to Defendants acts, Plaintiff's Wine had an estimated market value of over $7,000,000." Complaint ¶ 34.

Plaintiff alleges that Defendants violated the UCL by committing fraud and deceit, which certainly satisfies the UCL. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949-50 (2002). Plaintiff specifically alleges that Defendants made false and misleading statements that Plaintiff relied upon and ultimately suffered damages as a result of Defendants scheme, in direct violation of California Business & Professions Code § 17200, et seq., which prohibits amongst other conduct, misleading statements. Defendants' misleading statements are properly alleged throughout the Complaint and therefore the Motion to dismiss should be denied.

Furthermore, Defendants argue Plaintiff's UCL cause of action fails to state a claim because Plaintiff is not a consumer. However, this argument appears to be misplaced, as there is a "business to business" market for selling all the sorts of goods and services that businesses need, from bottles and corks to masks and sanitizer and so on. For businesses selling into the business to business market, other companies are the proximate consumers of the Defendants products and/or services and ultimately any increased costs are passed down to the individual consumers thereby directly or indirectly affecting interstate commerce. This argument also fails.

Defendants further contend that their price gouging can only last for 30-days, however, this is not the case as we are in an ongoing pandemic. The state of emergency has not been lifted by the Governor, in fact, it keeps getting extended. Therefore, there can be no expiration or prohibition on

price hikes. Accordingly, Plaintiffs have adequately stated a cause of action under the UCL, and the Motion to Dismiss should be denied If the Court finds that these allegations are not alleged in the Complaint with sufficient particularity, this again can be cured through amendment.

**D.   Plaintiff's Fifth and Sixth Causes of Action for Unjust Enrichment and Civil Conspiracy Have Been Adequately Pled**

A conspiracy claim in California has three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct." *AREI II* Cases, 216 Cal. App. 4th 1004, 1022 (2013). Defendants must reach "some explicit or tacit understanding or agreement." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990).

As discussed herein above, Plaintiff has pled its Civil RICO and fraud with specificity. Plaintiff has also pled civil conspiracy with the requisite specificity. Plaintiff has properly pled unjust enrichment. Defendants have failed to provide any basis to dismiss the Complaint other than mere conclusory allegations. Once again, Defendants erroneously allege that the Complaint fails to allege any "concrete or even estimated damages" as Plaintiff clearly states in pertinent part that: "… prior to Defendants acts, Plaintiff's Wine had an estimated market value of over $7,000,000." Complaint ¶ 34.

Without the benefit of discovery, Plaintiff cannot know with certainty whether explicit or tacit agreements existed between Intercoastal and the remaining Defendants. The Complaint however, alleges a civil conspiracy and unjust enrichment.

**E.   Plaintiff's Seventh Cause of Action for Conversion is Valid Against All Defendants**

"[A]ny act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property." *Bancroft-Whitney Co. v. McHugh* (1913) 166 Cal. 140, 143. The elements of a conversion claim are: (1) the plaintiffs ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

damages." *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240. A party need only allege it is "entitled to immediate possession at the time of conversion." *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.

Furthermore, shareholders, officers, and directors of corporations have been held personally liable for intentional torts when they knew or had reason to know about but failed to put a stop to tortious conduct. *PMC, Inc. v. Kadisha*, (2000) 78 Cal. App. 4th 1368; *McClory v. Dodge* (1931) 117 Cal. App. 148, 153. {Directors who knew, or by the exercise of reasonable diligence and care could and would have known were personally liable]. Here, Defendants by placing numerous conditions to its removal, including, but not limited to, **prior payment of a 1,250% fee increase** before any wine could be removed constitutes conversion. Further, an officer's or director's knowing consent to, or approval or authorization of, wrongdoing suffices to impose personal liability. *Frances T. v. Village Green Owners Assn*. (1986) 42 Cal. 3d 490, 508-509.

Additionally, individual Defendants Mitch Spaletta and Rachele as a major shareholders and CEO and President of Intercoastal, are also personally liable for conversion for their knowing consent, approval of and authorization of Defendant Intercoastal's wrongdoing.

Plaintiff has alleged all of the necessary elements of conversion against Defendants and this cause of action must be allowed to stand.

## F.   Plaintiff's Eighth Cause of Action for Inunctive Relief Against All Defendants

Plaintiff needs an injunction to stop the acts by Defendants alleged in its Complaint. Defendants still have full control over Plaintiff's wines. On numerous prior occasions, Plaintiff attempted to negotiate the removal of its wine but was told that it could not do so prior to paying unconscionable and exorbitant invoices demanding price increase of 1,250%. Defendants stated in pertinent part that "…Plaintiff could not remove its Wine until all invoices were paid".  Complaint ¶ 31.

**G. Venue Is Proper In This Judicial District Under The General Venue Statute**

Plaintiff submits that venue is proper in the Northern District of California. For the reasons stated below and based on the declarations of Dimitrios Natsis, Partner of Omega Winery (hereinafter "Natsis"), and Plaintiff's CEO Hakam Misson (hereinafter "Misson") filed concurrently herewith.

Plaintiff, as alleged in the Complaint, is headquartered in Livermore, California, and does business in this judicial district. Natsis in his declaration filed concurrently herewith states that he has been a partner of Omega Vineyards (hereinafter referred to as "Omega") since 1996. The Winery was part of Omega's operations and was built in 2002; Natsis was responsible for all operations of Omega since harvest of 2017; on or about April 13, 2020, Omega sold its Winery (except wine inventory) and some of its real property to Defendants for $1.975M; to the best of his knowledge, on or about May 8, 2020 the transfer of Omega's Federal TTB Basic Permit (license number BW-CA-6529) took place to Defendants. To the best of his knowledge, on or about May 12, 2020, the transfer of Omega's State ABC Type 2 and Type 14 (licenses number 401871) took place to Defendants. As of August 31, 2020, according to the California ABC website, the transfer of Omega' State ABC licenses are still pending; from 2016 to 2018, Omega did business with Rumaani Vineyards, located in Livermore, California; the principal of Rumaani Vineyards, a significant customer of Omega, introduced Natsis to Misson, in Livermore, CA; since 2018, over 60% of the wine production and storage customers of Omega have been from Livermore, California.

In 2019, prior to sale to Defendants, Omega was in contract to sell to another buyer, Rangel Ranch, LLC and/or Assignee (hereinafter "Rangel"). As a condition of this sale to Rangel, all of Omega's wine storage clients had to move their wine out from Omega prior to close of escrow in October 2019. Upon Omega's request, Plaintiff, moved all of its wine out of Omega to another facility.

On or about October 9, 2019, the sale to Rangel fell through. Natsis then again met with Misson in Livermore, CA, and negotiated an oral agreement for Plaintiff to move its wine back to Omega at a fixed rate of $0.08/storage fee per gallon and to process its 2019 grapes at $150/ton. As a part of this agreement, Omega paid the transport cost to move the wine back to Omega.

Since 2019, over 80% of the wine production and storage customers of Omega have been from Livermore, California. On April 13, 2020, when Omega was sold to Defendants, about 95% of Omega's wine production and storage business was from customers in Livermore, California.

First, venue is proper in the Northern District of California because "a substantial part of the events or omissions giving rise to the claim occurred" in Alameda County. 28 U.S.C. § 1391(b)(2). The negotiated oral agreements which were entered into in this district with Corporate Defendant's predecessor Omega Vineyards (hereinafter "Omega"). Some of the factors that may be relevant in determining where a "substantial part" of the events or omissions occurred include, where the negotiations took place, where the contract was signed, or where the performance or breach occurred. Applying such factors to the present case, a "substantial part of the events or omissions" that gave rise to Plaintiff 's claim against defendants took place in the County of Alameda in Livermore, CA, or, the Northern District.

[T]he circuits appear to agree that venue may be proper in multiple districts if a "substantial part" of the underlying events took place in each of those districts. Thus, [a] [p]laintiff need not show that the [chosen district] has the most substantial relationship to the dispute, or that it is the "best" venue. Rather, for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere. Where, as here, a case involves a contract dispute, courts have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred to determine whether venue is proper. Richmond Tech., Inc. v. Aumtech Bus. Solutions,

2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (internal citations & quotation marks omitted). See also Farm Credit West, PCA v. Lanting, 2013 WL 3730391, at *2 (E.D. Cal. July 12, 2013) ("In a contract action, relevant factors to be considered when determining venue are where the negotiations took place, where the contract was signed, where performance or breach occurred, or the place where parties acted or were engaged in business.").

As demonstrated by the declarations submitted by Plaintiff, it is evident that a "substantial part" of the events giving rise to this action occurred in the Northern District of California. Natsis through his Declaration (hereinafter "Natsis Declaration"). ¶¶ 3-14. Misson through his Declaration (hereinafter "Misson Declaration"), has been communicating with Defendant, Mitch Spaletta, since he took over the operation of the winery from Omega, via email and phone from Plaintiff's offices in Livermore, CA and Danville, CA. Misson Decl. ¶ 14. In light of all of these contacts with the district, venue is appropriate in the Northern District of California pursuant to Section 1391(b)(2)

**The Court Should Not Transfer The Action On The Basis That It Would Be More Convenient For Another District To Adjudicate The Dispute**

A transfer of venue for convenience is governed by 28 U.S.C. § 1404(a). When such a request is made by motion, "[t]he burden is on the moving party to show that transfer is appropriate." LFG Nat'l Cap., LLC v. Gary, Williams, Finney, Lewis, Watson & Sperando, P.L., 2012 WL 8109236, at *3 (C.D. Cal. Mar. 9, 2012) (Gutierrez, J.). An action should not be transferred to another district when doing so "would merely shift rather than eliminate inconvenience." See Decker, 805 F.2d at 843. In its evaluation, "the Court should weigh multiple factors in addition to the convenience of witnesses and the interests of justice, including the following factors derived from the forum non conveniens context:

(1) the location where the relevant agreements were negotiated and executed, (2) the plaintiff's choice of forum, (3) the respective parties' contacts with the forum, (4) the contacts relating to the

plaintiff's cause of action in the chosen forum, (5) the differences in the costs of litigation in the two forums, and (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses.

Based on an analysis of the pertinent factors, Plaintiff submits that this action should remain in the Northern District of California, and that it should not be transferred to the Eastern District of California.

**Convenience of The Witnesses:** "[C]ourts often recognize [the convenience of the witnesses] as the most important factor in ruling on a motion to transfer under 28 U.S.C. § 1404(a)." Additionally, "[t]he convenience of non-party witnesses generally takes precedence over the convenience of party witnesses."

The most important non-party witnesses that have been identified to date are located in the Northern District of California. Misson Decl. ¶ 13. Thus, on the whole, this factor weighs against a transfer to the Eastern District of California or any other district.

**Convenience of The Parties And Interests Of Justice:** As the majority of Defendants' storage clients were located in this district and Plaintiff maintains an office in Alameda, California, through which it engages in substantial work relating to its operations. Misson Decl. ¶¶ 1-2. Defendants cannot seriously contend that it would suffer any inconvenience or injustice from litigating in this forum. Finally, it is noteworthy that Defendants have not objected to Plaintiff's chosen venue based upon 28 U.S.C. § 1404(a). Accordingly, there is no evidence that the parties will be inconvenienced by litigating in this district, or that doing so would cause Defendants to suffer any injustice.

**The Location Where The Relevant Agreements Were Negotiated And Executed:** As detailed in the Natsis Declaration and Misson Declaration, the negotiation of price per Gallon for storage fees occurred in the Northern District of California. Natsis Decl. ¶ 12; Misson Decl. ¶ 10. There is no

evidence that any part of the negotiations occurred in the Eastern District. This factor, therefore, weighs against a transfer.

**Plaintiffs' Choice Of Forum And The Parties' Contacts With The Forum:** "Ordinarily, 'great weight' is accorded to the plaintiff's choice of forum.". This is especially true where the parties have had extensive contacts with the forum. Substantial case-related contacts occurred in the Northern District. (In determining how much weight to give the plaintiffs' choice of forum, 'consideration must be given to the extent of both 'the plaintiffs' and defendants' contacts with the forum relating to the cause of action). At a general level, the parties all have substantial and ongoing contacts with the Northern District of California. Plaintiff's Alameda office has significant responsibility for the operation of Plaintiff's businesses. Misson Decl. ¶¶ 1-2. Plaintiff also regularly communicates with Defendants and third parties in this district. Moreover, Plaintiff is immersed in activities in this district. The parties have had substantial contacts with the Northern District of California in connection with this case. As discussed, the negotiated fixed price for storage of the wine was from this district. Defendants intentionally inserted themselves into this district by communicating with Plaintiff in this district. Natsis Decl. ¶ 12 and Misson Decl. ¶ 10. Based on these facts, Plaintiffs' choice of forum is entitled to "great weight" under the Section 1404(a) analysis.

**The Differences In The Costs of Litigation, Availability of Compulsory Process, And Ease of Access To Proof:** There is simply no other district that is superior to the Northern District of California when considering the likely litigation costs, the availability of compulsory process, and the ease of access to proof. A large portion, if not all, of the material documents in this case are already located within the Northern District of California. Based upon information and belief, the most important non-party witnesses are also located in the Northern district of California. Misson Decl. ¶ 13. Furthermore, if the case is transferred to Eastern District of California, it will not result in an

increase in the number of pertinent non-party witnesses who can be compelled to testify.

Consequently, these factors do not favor a transfer.

**Summary of Convenience Factors:** As the foregoing analysis demonstrates, the relevant Section 1404(a) factors all strongly weigh against the transfer of this case to another district. In particular, the relevant factors do not support a transfer to the Eastern District of California. The contracts were not negotiated in that district, and it is otherwise bereft of case-related contacts.

**There is General Jurisdiction Over Defendants in the Northern District:** The "continuous and systematic" contacts as set forth in Helicopteros Nacionales de Columbia. S.A. v. Hall, as discussed herein. Section 1404(a) of Title 28, United States Code, provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Along with the plaintiff's choice of forum, this Circuit has interpreted the provisions of Section 1404(a) to include various other considerations: ease of access to the evidence; the familiarity of each forum with the applicable law; the nexus between the forum and the causes of action; the feasibility of consolidating other claims; the relative court congestion and time to trial in each forum; the location where the relevant agreements were negotiated and executed; the parties' contacts with the forums; and difference in the costs of litigation between the two forums; and the availability of compulsory process to compel attendance of unwilling non-party witnesses. Meijer, Inc. v. Abbott Laboratories, 544 F.Supp.2d 995, 999 (N. D. Cal. 2008) [citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986), and Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000)]. In considering the appropriateness of a transfer of venue, "[n]o single factor is dispositive, and a district court has broad discretion" to determine the most convenient location for trial of a matter "on a case-by-case basis." Meijer, supra, 544 F.Supp.2d at 999 [citing Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)]. The Northern

District of California was chosen by the Plaintiff. Nor does the Defendant's "business location" have any bearing on the question. Defendants motion to dismiss as to improper venue should be denied.

## IV.    THE COURT SHOULD EXERCISE ITS DISCRETION TO RETAIN JURISDICTION OVER PLAINTIFF'S STATE CLAIMS IN THE UNLIKELY EVENT PLAINTIFF'S FEDERAL CLAIMS ARE DISMISSED.

Plaintiff has crafted valid federal claims for relief in its Complaint and is entitled to have his claims proceed in this Court. However, in the event that the Court finds otherwise, Plaintiff requests the Court to deny Defendants' request to dismiss pendent state claims in the unlikely event that Plaintiff's federal claims are dismissed at this stage. The supplemental jurisdiction statute (28 USC 1367(a)) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 USC 1367(a). Circuits that have ruled on the question interpret the statute not to deprive the district court of jurisdiction to decide the related state claims even though the federal claim upon which removal was based is dismissed on the merits. *Albingia Versicherungs A.G. v. Schenker Int'l Inc.* (2003) 344 F.3d 931, 937. Thus, even if all federal claims are dismissed before trial, this has never meant that state law claims must be dismissed. *Id.* All of Plaintiff's federal and state claims arise out of a common nucleus of operative Complaintts and involve approximately the same scope of proof and issues. Supplemental jurisdiction is strongly favored when the federal and state claims are closely related. *Miller v. Lovett*, 879 F.2d 1066, 1072 (2nd Cir. 1989).

## V.    DEFENDANTS CHALLENGE TO SERVICE OF PROCESS.

Defendants have not filed any motion to quash service and have not stated in their pleadings that they are only specially appeared in this action thereby waiving any alleged process of service issues. Defendants seem to have made a general appearance by filing a motion to dismiss. Filed

herewith is a Declaration from Dan Abdallah, a California registered process server who served all Defendants.

VI.     **PLAINTIFF REQUESTS LEAVE TO AMEND IN THE EVENT THE COURT FINDS ANY DEFICIENCIES IN PLAINTIFF'S PLEADING**:

When a complaint, or cause of action, is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other Complaintts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiff believes he has pleaded well-grounded and substantive causes of action in his First Amended Complaint. Notwithstanding, should the Court have any concerns, it should grant leave to amend.

### VII.   CONCLUSION

Plaintiff's Complaint contains valid federal and state claims for relief. Thus, for the reasons stated herein, Plaintiff respectfully requests that the Motion to Dismiss Plaintiff's Complaint be denied in its entirety. In the alternative, Plaintiff seeks leave to amend if the Motion to Dismiss is granted.

Respectfully Submitted,

Dated: September 9, 2020                              LAW OFFICES OF SUNITA KAPOOR

                                                                    _____

                                                                    Sunita Kapoor, Attorney for Plaintiff